UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| CIRCLE CITY BROADCASTING I, LLC AND NATIONAL ASSOCIATION OF BLACK OWNED BROADCASTERS, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | CASE NO. 1:20-cv-00750-TWP-TAB |
| DISH NETWORK, LLC, | ) ) | |
| Defendant. | ) ) | |

**PLAINTIFFS' RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION TO DISMISS**

The plaintiffs, Circle City Broadcasting I, LLC ("Circle City") and National Association of Black Owned Broadcasters ("NABOB") (together, "Plaintiffs"), by counsel, respectfully submit their response in opposition to the motion to dismiss filed by the defendant, DISH Network, L.L.C. ("DISH").

**Introduction**

The pleading standard set forth in Rule 8 of the Federal Rules of Civil Procedure is not a high bar. It requires a short, plain, and concise statement of the claim asserted such that the defendant has sufficient notice of the claim and can begin to investigate and prepare a defense. There is no doubt or ambiguity about what Circle City has alleged in this race discrimination claim under 42 U.S.C. § 1981 ("Section 1981"): (1) Circle City is a minority owned business; (2) it purchased two Indianapolis-based television stations from a non-minority owned business; (3) every multi-channel video programming distributor with whom Circle City's predecessor had a retransmission agreement assigned their contract to Circle City, except for DISH and one other (Directv); (4) Circle City made immediate improvements to the content and quality of the

stations; and (5) DISH refused to offer Circle City anything more than pennies on the dollar of what it offered Circle City's non-minority predecessor, even though the stations offered more and better content than before. These allegations are sufficient for a jury to conclude that had Circle City's owner been white (as the previous broadcaster's operator had been) and everything else remained the same, DISH would have offered the same or similar contract terms as it offered to Circle City's predecessor. The Court should deny DISH's motion to dismiss.[1]

## Argument

### A. Standard of Review

Even with the ubiquity of *Twombly* and *Iqbal*,[2] notice pleading is still the rule. Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). No technical form is required. Fed. R. Civ. P. 8(d)(1). And courts must construe pleadings "so as to do justice." Fed. R. Civ. P. 8(e). The requirements of notice pleading are satisfied if the complaint "give[s] the defendant sufficient notice to enable him to begin to investigate and prepare a defense." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1085 (7th Cir. 2008) (sex discrimination allegations deemed sufficient when plaintiff alleged she was female, she was paid less than similarly situated men, she believed this was "on account of her gender," and she had been treated differently in the terms and conditions of her employment than

---

[1] DISH says its motion is targeted at plaintiff NABOB as well as Circle City. The only reference to NABOB in DISH's brief, however, is the acknowledgment that NABOB is seeking injunctive relief on behalf of its members. Br., ECF No. 23, at 3. DISH says "NABOB does not allege that it or any of its members, apart from Circle City, have ever interacted with DISH. NABOB concludes, however, that it 'has standing' to sue DISH on those members' behalf." *Id.* (internal citations omitted). DISH does not mention NABOB again or develop its argument that NABOB lacks standing or should otherwise be dismissed. Presumably, then, NABOB's request for injunctive relief stands or falls with the outcome of DISH's arguments relative to Circle City.

[2] *Twombly* has been cited in 244,582 court decisions since decided 13 years ago, and *Iqbal* has been cited in 217,741 court decisions since 2009 (both figures via the Westlaw KeyCite function as of June 8, 2020).

similarly situated male employees). As the Supreme Court said long ago, "all the Rules require is a 'short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).[3] "This simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002).[4]

*Iqbal* and *Twombly* did not abrogate Rule 8. Instead, those cases recognized that Rule 8 "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* 556 U.S. 662, 679 (2009). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (*citing Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). And while *Twombly* introduced the bench and bar to the "plausibility" phraseology, post-*Twombly* decisions show that this plausibility inquiry is focused as much or more on legal sufficiency than on formalistic, fact-based pleading. *See Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 426-29 (2014) (plausibility pleading standard considered from perspective of whether facts alleged would, if true, support a claim as a matter of law); *Wood v. Moss*, 572 U.S. 744, 757-58 (2014) (applying plausibility analysis to qualified immunity complaint and concluding factual allegations in complaint foreclosed claim for relief

---

[3] *Twombly* did not overrule *Conley*. At most, it contextualized the "any set of facts" language in *Conley* as "the breadth of opportunity to prove what an adequate complaint claims, not the minimum standard of adequate pleading to govern a complaint's survival." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 563 (2007). In fact, the Supreme Court in *Twombly* recognized two separate facets of *Conley*. One was the statement, "retired" in *Twombly*, that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 561 (*citing Conley*, 355 U.S. at 45-46). The other, which *Twombly* did not "retire," repudiate or limit in any way, was Rule 8's permissive threshold of imposing no burden greater than providing fair notice of the grounds for entitlement to relief. *Id.*

[4] The Supreme Court favorably cited *Swierkiewicz* several times in *Twombly*. *See, e.g., Twombly*, 550 U.S. at 569-70. It remains good law and unaffected by *Twombly*.

3

as a matter of law); *Skinner v. Switzer*, 562 U.S. 521, 529-30 (2011) (citing *Swierkiewicz*, 534 U.S. at 514, for the proposition that the "liberal notice pleading of Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim").

As articulated in *Iqbal*, a claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. This standard "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* That is, the plaintiff must "include enough details about the subject-matter of the case to present a story that holds together." *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010).[5] But a plaintiff's pleading burden should also "be commensurate with the amount of information available to [it]." *Bausch v. Stryker Corp.*, 630 F.3d 546, 562 (7th Cir. 2010).

This is the backdrop for the two-step inquiry outlined in DISH's motion. First, courts are not required to accept legal conclusions as true (which is a principle in the 12(b)(6) context that long predates *Iqbal* and *Twombly*); and second, only a complaint that states a plausible (namely, sufficient) claim for relief survives a motion to dismiss. *Iqbal*, 556 U.S. at 678-79. That test must then be applied within the context of the substantive law, which provides the foundation for identifying what factual allegations are sufficient to move the claim forward. *Id.* at 675 ("Here too we begin by taking note of the elements a plaintiff must plead to state a claim of unconstitutional discrimination against officials entitled to assert the defense of qualified immunity.").

---

[5] In *Swanson*, the Seventh Circuit offered an example of what would be sufficient to survive a motion to dismiss in a sex discrimination claim: "A plaintiff who believes that she has been passed over for a promotion because of her sex will be able to plead that she was employed by Company X, that a promotion was offered, that she applied and was qualified for it, and that the job went to someone else." *Swanson*, 614 F.3d at 404. As discussed in Section B, Circle City has alleged at least that much, if not more.

4

**B.     Circle City alleged a but-for case of race discrimination against DISH.**

The starting point is an examination of what Circle City must prove to show a violation of Section 1981, followed by a review of the factual allegations set forth in the amended complaint. *See Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 140 S. Ct. 1009, 1014 (2020) ("So, to determine what the plaintiff must plausibly allege at the outset of a lawsuit, we usually ask what the plaintiff must prove in the trial at its end."). At trial, Circle City will have to prove that DISH discriminated against it because of race. That is, Circle City will have to persuade the jury that DISH refused to enter a contract with Circle City and that if Circle City had been owned by a white person but everything else had been the same, DISH would have entered a contract with Circle City. *See Gehring v. Case Corp.*, 43 F.3d 340, 344 (7th Cir. 1994); Federal Civil Jury Instructions of the Seventh Circuit, Instruction 3.01.[6]

The factual allegations in the amended complaint state a Section 1981 claim:

- Circle City is a minority-owned and historically disadvantaged business providing local television broadcasting with television stations located in and serving Indianapolis. Am. Compl., ECF No. 19, ¶ 2.

- Circle City, which is owned by DuJuan McCoy, acquired WISH TV-CW and WNDY-MyNet TV from Nexstar Broadcasting, Inc., effective September 19, 2019. *Id.* at ¶ 20.

- Before the sale, DISH had a retransmission agreement with Nexstar for those two stations. *Id.* at ¶ 24.

- After the sale, Circle City maintained and improved the content and quality of the television programming available on those stations. *Id.* at ¶ 21.[7]

---

[6] As noted by DISH, the Seventh Circuit applied the but-for causation standard in non-mixed motive cases for two decades before the Supreme Court's recent *Comcast* opinion. *See Gehring*, 43 F.3d at 344; *Bachman v. St. Monica's Congregation*, 902 F.2d 1259, 1263 (7th Cir. 1990). Thus, the elements of Circle City's claim under Section 1981 were the same before the *Comcast* decision as they are now.

[7] DISH declares this allegation is "not factual." Br., ECF No. 23, at 9. This contention distorts the holding and purpose of the *Iqbal* and *Twombly* standard and ignores entirely the pleading

5

- After the sale, every distributor previously doing business with Nexstar except for DISH and AT&T/Directv simply assigned their retransmission agreements with Nexstar to Circle City. *Id.* at ¶ 23.

- After the sale, DISH refused to consider an assignment of its retransmission agreement with Nexstar to Circle City even though it had the unfettered right to do so. *Id.* at ¶ 23.

- After the sale, DISH offered Circle City only pennies on the dollar of DISH's agreement with Nexstar for the same two stations, which Circle City had improved. *Id.* at ¶¶ 21, 25.

These are factual allegations, not legal conclusions or bare assertions of the elements. *See* BLACK'S LAW DICTIONARY 669 (9th ed. 2009) ("Fact" means "[s]omething that actually exists; an aspect of reality . . . Facts include not just tangible things, actual occurrences and relationships, but also states of mind such as intentions and opinions."). These allegations must be accepted as true when considering a 12(b)(6) motion. *See Swanson*, 614 F.3d at 404 ("For cases governed only by Rule 8, it is not necessary to stack up inferences side by side and allow the case to go forward only if the plaintiff's inferences seem more compelling than the opposing inferences."); *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009) (plausibility requirement "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence supporting the plaintiff's allegations"), quoting *Twombly*, 550 U.S. at 556.

DISH's brief mostly ignores these allegations. *See* Br., ECF No. 23, at 6-7. DISH purports to address the allegations in paragraph 21, but overlooks most of the content of that paragraph. Circle City alleged that, following its acquisition, it continued offering the

---

requirements of Rule 8. These may be qualitative, value-laden allegations, but they are nevertheless provable and are not legal conclusions that go to whether Circle City has stated a legally sufficient claim. *Iqbal* authorizes a court to disregard "legal conclusions and conclusory allegations merely reciting the elements of a claim." *Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2012) (citing *Iqbal*, 129 S. Ct. at 1951). DISH apparently would have the Court believe that empirical, peer-reviewed data is the only type of pleading that constitutes a "fact." That just isn't the standard.

programming Nexstar had offered, but made several value-added changes to its news and sports content, its multi-cultural reporting, and its medical reporting—the latter two items being critical to the coverage of the ongoing pandemic and racial injustice protests. Am. Compl., ECF No. 19, ¶ 21. DISH minimizes these allegations as "'enhanced' sports coverage." Br., ECF 23, at 7. There is so much more alleged in paragraph 21 such that DISH's selective and incomplete portrayal of what is there undercuts the credibility of its argument.

DISH also suggests that paragraph 25's allegation that DISH's approach to Circle City "reflected its bias against the race of Circle City's owner" is a conclusion unworthy of credence. *Id.* at 6. But DISH ignores the second sentence of paragraph 25, which followed several paragraphs of factual allegations demonstrating that the only meaningful change in the two stations sufficient to explain DISH's actions was the race of the owner. That second sentence reads, "DISH offered to contract with Circle City for ***pennies on the dollar*** compared to the rates it paid the prior broadcaster, Nexstar." Am. Compl., ECF No. 19, ¶ 25 (emphasis original). This is a Section 1981 case, where the operative law provides that all persons in the United States "shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. ¶ 1981. Paragraph 25 gets right at the heart of it: DISH refused to offer Circle City—an African American owned business—a contract on the same or similar terms for the same or better content than it had offered to Nexstar—which is not an African American owned business. These are factual allegations which, if true, answer the question that will be asked of the jury in this case, namely, whether or not race was the but-for cause of DISH's actions.

Indeed, in terms of the Seventh Circuit's jury instruction, these factual allegations advance the claim that had Circle City's owner been white and everything remained the same,

DISH would have agreed to terms with Circle City. Before the sale, the two stations in question were owned by a non-minority business and DISH had a lucrative retransmission agreement with that entity. At the time of the sale, all of Nexstar's contract partners, save DISH and Directv, outright assigned their existing retransmission agreements to Circle City. After the sale, Circle City, the new minority owner of these two stations, improved the content and quality, and therefore the value, of the stations but nevertheless was rebuffed by DISH. If the content of the stations remained the same or improved and the race of the owner changed from white to black, it is plausible to conclude that the race of the owner was the but-for cause of DISH's refusal to negotiate a fair deal with Circle City. This is the very essence of the fact pattern required by the *Gehring* case and the Seventh Circuit's jury instruction. As a matter of pleading, Circle City has stated a claim sufficient to advance to the next stage of the case. *See Erickson v. Pardus*, 551 U.S 89, 94 (2007) (prisoner's allegation that doctor "endangered [his] life" by removing petitioner from hepatitis C medication and other general allegations were sufficient under Rule 8(a)(2)), citing *Twombly*, 550 U.S. at 555-56.

Even so, DISH argues that the Court should dismiss Circle City's complaint because Nexstar got a better deal because Nexstar was a "publicly traded behemoth," a "large corporation," and had "around 171 stations, reaching over 38% of American Households" in its portfolio." Br., ECF No. 23, at 1, 2, 10. DISH also argues that Circle City was not a party to the Nexstar contract and that Nexstar was "a much larger broadcasting corporation with far more stations and leverage." *Id.* at 8. *See also id.* at 9 n.3. These are summary judgment arguments, not pleading standards. *See Virnich*, 664 F.3d at 213 ("These are fine questions for summary judgment, but to accept such doubts as dispositive on a Rule 12(b)(6) motion to dismiss" would be improper.). At most, DISH is previewing its defense on the merits. But "[w]hen a federal

court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974).[8] Thus, from a pleading perspective, Circle City has done enough. It was required only to inform DISH "of the factual basis for [its] complaint." *Johnson v. City of Shelby, Miss*, 574 U.S. 10, 12 (2014) (per curiam). It was "required to do no more to stave off threshold dismissal for want of an adequate statement of [its] claim. See Fed. Rules Civ. P. 8(a)(2) and (3), (d)(1), (e)." *Id.*

### C. DISH's cited cases are distinguishable and provide no basis to dismiss the amended complaint.

DISH primarily relies on the Northern District of Indiana's decision in *Cross v. Nike, Inc.* and the Seventh Circuit's decision in *LaBella Winnetka, Inc. v. Village of Winnetka* to support its argument for a summary judgment-level pleading standard, but those cases are inapposite. In the *Nike* case, Cross, *pro se*, sued Nike under Section 1981 after Nike declined his unsolicited internet idea for a new t-shirt. *Cross v. Nike, Inc.*, 2017 WL 4340191, *1-2 (N.D. Ind. Sept. 29, 2017). In dismissing the claim, the court wrote, "In place of facts, Mr. Cross relies on conclusory 'the-defendant-unlawfully-harmed-me' allegations, and information from the internet relating to Nike's dealings with 'white inventors' . . . and 'Caucasian corporations' (the NBA, NFL, MLB, and NCAA)." *Id.* at *3. The court noted that Cross, himself, admitted that "his submissions didn't meet Nike's requirements," and that "there's no indication that Nike was even aware of

---

[8] DISH's bargaining power argument reinforces the sufficiency of Circle City's allegations and shows the need for discovery. In all discrimination cases with pretextual justifications for the challenged action, the discriminator hides behind the pretext and tries to convince the fact-finder that the pretextual reason is the real reason for its actions. DISH can argue on the merits, after discovery, that this bargaining power justification is not a pretext, but that will depend on what discovery reveals. The pleading stage is neither the time nor the place to litigate the believability of that justification.

Mr. Cross's race when it initially rejected his submissions in 2012 and 2014." *Id.* Consequently, "Mr. Cross has effectively pleaded himself out of court." *Id.*

The *Nike* case teaches nothing with respect to DISH's arguments. In that case, the plaintiff's allegations actually foreclosed his claim, which satisfies the Rule 12(b)(6) dismissal standard. *See Wood*, 572 U.S. at 761-63 (plaintiffs' acknowledgement of any valid security reason for secret service's actions defeated *Bivens* claim at pleading stage). There is no corresponding limitation or negative admission by Circle City here. Instead, Circle City has alleged facts sufficient to conclude, consistent with Supreme Court decisions and Seventh Circuit case law and jury instructions, that race is the but-for cause of this dispute.

In the *LeBella* case, a restaurant owner brought an Equal Protection claim following what it believed was disparate treatment in a government permit process following a fire that caused the closure of the restaurant. The plaintiff argued that other similarly situated restaurants, whose businesses and owners were "favored" by the village manager, received permits to reopen immediately after the fire. *LaBella Winnetka, Inc. v. Village of Winnetka*, 628 F.3d 937, 940 (7th Cir. 2010). The Seventh Circuit affirmed the district court's dismissal after reviewing the pleadings and concluding that, based on the specific facts alleged in the complaint, the restaurants were not similarly situated. *Id.* at 942. As to one comparator restaurant, the Court highlighted the allegation that the two restaurants "faced 'the same risks' after the fire because the two were located immediately adjacent to one another on the same floor of the same building." *Id.* The court said this "allegation may have been sufficient to survive a motion to dismiss." *Id.* In looking at the plaintiff's briefing, however, the court wrote, "LaBella made clear that the roof over the building housing Corner Cooks and portions of LaBella was ***not*** damaged by the fire. The only damage was to the roof over LaBella's main dining room." *Id.* (emphasis

original). Because of this, the plaintiff "failed to adequately allege the existence of a similarly situated restaurant." *Id.*

As with the *Nike* case, the issues in *LaBella* germinated from the inherent weakness in the plaintiff's allegations—the plaintiff could not allege a sufficient claim because the facts alleged foreclosed the claim as a matter of law. Here, as noted above, Circle City has alleged facts sufficient to show only two meaningful changes with respect to the two Indianapolis television stations at issue. First, Circle City quickly improved the content and quality of the offerings. Second, the race of the owner changed from white to black. If Circle City actually improved the quality and value of the stations compared to the previous owner as alleged and still can't get a fair shake from DISH, a jury is entitled to conclude that DISH would have offered Circle City a fair contract if Circle City's owner were white and "everything else had remained the same." *Gehring*, 43 F.3d at 344.

DISH also relies on the *Comcast* case, itself. Specifically, DISH argues that in *Comcast*, "an 'African-American owned' medial company (ESN) sued a television programming distributor (Comcast) for refusing to carry channels due to alleged racial animus. And there, as here, the lawsuit stated no plausible claim." Br., ECF No. 23, at 5 (*citing Comcast*, 140 S. Ct. at 1019). DISH also suggests that the pleading standard identified by the district court in that case required specific allegations of the "actual," rather than "potential," demand for the plaintiff's programming. *Id.* at 9 (*citing Nat'l Ass'n of African-Am. Owned Media v. Comcast Corp.*, 2016 WL 11652073, at *1 (C.D. Cal. Oct. 5, 2016)). Not so. After confirming the but-for standard already applicable in the Seventh Circuit, the Supreme Court remanded the case to the Ninth Circuit for further proceedings under the proper legal standard. *Comcast*, 140 S. Ct. at 1019. Similarly, the Ninth Circuit remanded the case back to the district court for "further proceedings

consistent with *Comcast*." *See Nat'l Ass'n of African-Am. Owned Media v. Comcast Corp*, 2:15-cv-01239-TJH-FFM, ECF No. 99 (C.D. Cal. May 7, 2020). Thus, the sufficiency of the operative complaint in that case has not yet been resolved. (On June 3, 2020, the court ordered the parties to submit a status report by July 3. *Id.* at ECF No. 101.)

More importantly, there is only one complaint in front of this Court, and that is the amended complaint filed on May 7, 2020. The only question in front of this Court right now is whether that amended complaint states a legally sufficient claim for relief under Rule 8, the Supreme Court's decision in *Comcast*, and the Seventh Circuit's standard in *Gehring* as embodied in the Circuit's pattern jury instruction. Circle City has alleged facts, detailed above, that support the ultimate conclusion that but for the race of its owner, and all other things being the same, DISH and Circle City would have reached an agreement on the retransmission contract. Regardless of what the Central District of California does on remand with the complaint in *Comcast*, the amended complaint in this case states a sufficient claim for relief.

## Conclusion

Circle City has stated a sufficient claim under Section 1981 for race discrimination. DISH's motion to dismiss should be denied.

Respectfully submitted,

/s/ *Andrew M. McNeil*
Gregory F. Hahn (#10547-49)
V. Samuel Laurin (#11607-53)
Andrew M. McNeil (#19140-49)

BOSE McKINNEY & EVANS LLP
111 Monument Circle, Suite 2700
Indianapolis, IN 46204
(317) 684-5000; (317) 684-5173 (Fax)
ghahn@boselaw.com
slaurin@boselaw.com
amcneil@boselaw.com

John Bruse Loyd (TX 24009032)
Jones, Gillaspia & Loyd, LLP
4400 Post Oak Pkwy., Suite 2360
Houston, TX 77027
(713) 240-5646
bruse@jgl-law.com

Daniel A. Kirkpatrick (VA #65639)
Fletcher, Heald & Hildreth, PLC
1300 North 17th Street, 11th Floor
Arlington, VA 22209
(703) 812-0432
kirkpatrick@fhhlaw.com

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on June 8, 2020, a copy of the foregoing "Plaintiffs' Response in Opposition to Defendant's Motion to Dismiss" was filed electronically. Notice of this filing will be sent to the following parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's CM/ECF system.

>John R. Maley, Esq.
>Dylan A. Pittman, Esq.
>Barnes & Thornburg LLP
>11 South Meridian Street
>Indianapolis, IN 46204
>jmaley@btlaw.com
>Dylan.pittman@btlaw.com

/s/ *Andrew M. McNeil*
Andrew M. McNeil

3861375