UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CIRCLE CITY BROADCASTING I, LLC, and NATIONAL ASSOCIATION OF BLACK OWNED BROADCASTERS, )))) | |
| Plaintiffs, )) | |
| v. ))) | Case No. 1:20-cv-00750-TWP-TAB |
| DISH NETWORK, LLC, ))) | |
| Defendant. ) | |

### ENTRY ON DEFENDANT'S MOTION TO DISMISS

This matter is before the Court on a Motion to Dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) by Defendant DISH Network LLC ("DISH") (Filing No. 22). Plaintiffs Circle City Broadcasting I, LLC ("Circle City") and National Association of Black Owned Broadcasters ("NABOB") (collectively, "Plaintiffs"), initiated this action against DISH under 42 U.S.C. § 1981, alleging that DISH refused to "contract in a non-discriminatory manner with" Circle City. (Filing No. 19.)  DISH moved to dismiss, arguing, among other things, that the Amended Complaint did not allege the "but-for causation" required for these types of claims (Filing No. 22 at 1 (citing *Comcast v. NAAAOM*, 140 S. Ct. 1009, 1019 (2020)).  For the following reasons, the Court **denies** DISH's Motion.

### I.     BACKGROUND

The following facts are not necessarily objectively true, but as required when reviewing a motion to dismiss, the Court accepts as true all factual allegations in the Amended Complaint and draws all inferences in favor of Circle City as the non-moving party.  *See Bielanski v. County of Kane*, 550 F.3d 632, 633 (7th Cir. 2008).

Plaintiffs initiated this action on March 9, 2020, but sought and were granted leave to file an amended complaint on May 7, 2020. (Filing No. 18.) In their Amended Complaint, Plaintiffs allege the following: Circle City is a small, minority-owned and historically disadvantaged business providing local television broadcasting with television stations located in and serving Indianapolis, Indiana and the surrounding areas. (Filing No. 19 at 1.) NABOB – a nonprofit corporation, that currently represents 167 radio stations owned by 59 different radio broadcasting companies and 21 television stations – is a major trade association representing the interests of the African American owned commercial radio and television stations across the country. *Id*. at 1-2. NABOB was organized as a response to the abysmal underrepresentation of African Americans in the communications industry. *Id*. at 2. Circle City is a member of NABOB. *Id*. at 3.

DISH is a national telecom company that provides direct television broadcast satellite services and has a long history of discriminating against minority-owned businesses, and through its "policies," has removed itself from contracting fairly with African American and other minority owned companies, and is systemically preventing like broadcasters and programmers to continue to grow their businesses. *Id*. at 3-4.

Nexstar Broadcasting, Inc. ("Nexstar") is a "large, historically white-owned," publicly-traded corporation (Filing No. 19 at 3, 5).

On September 19, 2019, majority African American owned and operated Circle City purchased from Nexstar, two standalone network-affiliated television stations in Indianapolis –-WISH-TV, (a CW Affiliate) and WNDY-TV, (a MyNet Affiliate). *Id*. at 6. Under Circle City's ownership, the standalone, network-affiliated stations, WISH TV and WNDY-TV, suffered "no reduction in the content and quality of television programing" following the "seamless" transition from Nexstar to Circle City. *Id.* at 6–7. Instead, "there was only immediate improvement as Circle

City added value to both stations," including the production of "more local news content than any station in the country," the airing of "live local High School sporting events" and "enhanced college and professional sporting events coverage," and the addition of "the only Multi-Cultural Reporter" and "the only Medical Reporter" in the state of Indiana. *Id.* at 7. "[T]he only meaningful change," in addition to these improvements, "was the fact that the stations were now majority owned by an African American, DuJuan McCoy." *Id.*

While DISH "paid significant retransmission consent fees" to Nexstar before the sale, "DISH refused to negotiate the retransmission contracts in good faith with the minority-owned Circle City" and "refused to even agree to an assignment of the remaining term of its retransmission agreements with Nexstar to Circle City." *Id.* at 7–8. Instead of "recogniz[ing] and celebrat[ing this] great American accomplishment and advancement," *id.* at 7, "DISH offered to contract with Circle City for pennies on the dollar compared to the rates it paid the prior broadcaster, Nexstar" sending a message to Circle City's owner that "minority broadcasters need not apply." *Id.* at 8 (emphasis removed).

Circle City was "able to secure long-term deals with other large distributors like Comcast, Charter and all other cable operators in the area." *Id.* at 7. As such, "DISH has engaged in, and is engaging in, intentional racial discrimination in contracting, which is a violation of 42 U.S.C. § 1981." *Id.* at 9. Circle City contends that "DISH has violated, and continues to violate, Circle City's civil rights … by not allowing Circle City its right to make and enforce contracts as is enjoyed by white persons in America." *Id.* at 10. Circle City sues for "retransmission fees at a fair market rate, actual and punitive damages, interest, reasonable attorneys' fees and costs resulting from the intentional misconduct exhibited by DISH in its disingenuous 'negotiations' with Circle City." *Id.* NABOB "seeks injunctive relief to enjoin the unlawful acts" of DISH. *Id.* at 11.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move to dismiss a complaint that has failed to "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). When deciding a motion to dismiss under Rule 12(b)(6), the court accepts as true all factual allegations in the complaint and draws all inferences in favor of the plaintiff. *Bielanski*, 550 F.3d at 633. However, courts "are not obliged to accept as true legal conclusions or unsupported conclusions of fact." *Hickey v. O'Bannon*, 287 F.3d 656, 658 (7th Cir. 2002).

The complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). In *Bell Atlantic Corp. v. Twombly*, the United States Supreme Court explained that the complaint must allege facts that are "enough to raise a right to relief above the speculative level." 550 U.S. 544, 555 (2007). Although "detailed factual allegations" are not required, mere "labels," "conclusions," or "formulaic recitation[s] of the elements of a cause of action" are insufficient. *Id.*; *see also Bissessur v. Ind. Univ. Bd. of Trs.*, 581 F.3d 599, 603 (7th Cir. 2009) ("it is not enough to give a threadbare recitation of the elements of a claim without factual support"). The allegations must "give the defendant fair notice of what the … claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 555. Stated differently, the complaint must include "enough facts to state a claim to relief that is plausible on its face." *Hecker v. Deere & Co.*, 556 F.3d 575, 580 (7th Cir. 2009) (citation and quotation marks omitted). To be facially plausible, the complaint must allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). "To withstand a Rule 12(b)(6) challenge … 'the plaintiff must give enough details about the subject-matter of the case to present a story that holds together,' and the question the court should ask is '*could* these things have happened, not *did* they happen.'"

*Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 533 (7th Cir. 2011) (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404–05 (7th Cir. 2010)) (emphasis in original).

### III.  DISCUSSION

In their Amended Complaint, Plaintiffs allege that DISH violated 42 U.S.C. § 1981 by refusing to contract with Circle City "in a non-discriminatory manner." ([Filing No. 19 at 1](#).) To prevail on a § 1981 claim, "a plaintiff must initially plead and ultimately prove that, *but for race*, it would not have suffered the loss of a legally protected right." *Comcast*, 140 S. Ct. at 1019 (emphasis added).  For many years, the Seventh Circuit has held, "to be actionable, racial prejudice must be a but-for cause, or in other words a necessary condition, of the refusal to transact." *Bachman v. St. Monica's Congregation*, 902 F.2d 1259, 1263 (7th Cir. 1990). Moreover—as in all civil cases—if there is an "obvious alternative explanation" for a complaint's factual allegations, dismissal is appropriate. *Iqbal*, 556 U.S. 682; *Twombly*, 550 U.S. at 567; *Smoke Shop, LLC v. United States*, 761 F.3d 779, 785 (7th Cir. 2014).

DISH argues that Circle City's Amended Complaint "is littered with conclusory allegations that are not presumed true" and that "the few 'factual allegations' do not plausibly show discrimination." ([Filing No. 23 at 6](#) (citing *Iqbal*, 556 U.S. at 679).)  According to DISH, "those allegations show that Circle City rejected DISH's contractual proposals, and demanded compensation that had been negotiated by a much larger, publicly traded broadcaster [Nexstar] and memorialized in a contract to which Circle City was not a party." *Id.* DISH argues that the paragraphs in Circle City's Amended Complaint regarding causation—DISH's conduct in negotiations, and Nexstar's supposed "similarly situated" status—are conclusory allegations that receive no weight under Rule 12(B)(6). *Id.* at 6–7.  DISH contends that the remaining allegations in the Amended Complaint "do not plausibly show that DISH would have acquiesced to Circle

City's demands but for supposed racial animus." *Id.* at 8.  DISH posits that its decision to reject paying Circle City, a "'small, independent' broadcaster" the same fee it had "acquiesced to pay a 'large,' 'publicly traded' broadcast (Nexstar)" did not reflect bias against the race of Circle City's owner. *Id.* at 1.  According to DISH, Nexstar was "a much larger broadcasting corporation with far more stations and leverage" and its decision to pass on the opportunity to contract with Circle City "suggests a 'legitimate, non-discriminatory business decision' that requires this lawsuit's dismissal." *Id.* at 8 (quoting *Cross v. Nike, Inc.*, 2017 WL 4340191, at *3 (N.D. Ind. Sept. 29, 2017)).  DISH contends the facts do not back up Circle City's assertion "that the 'only meaningful' difference between Circle City and Nexstar is 'race,' and that they are otherwise 'similarly situated.'" *Id.* at 8.

Further, DISH argues that Circle City's contention that "its programming underwent 'no reduction in … quality,' and actually, showed 'only immediate improvement'" are nonfactual allegations because "they sidestep questions that matter" such as "when Nexstar and DISH agreed upon fees for the two stations at issue, for how many other Nexstar stations did they negotiate compensation?" *Id.* at 9 (emphasis removed). Additionally, DISH asserts that Circle City's Amended Complaint does not address "the 'actual,' rather than 'potential,' demand for [Circle City's] programming." *Id.*

In response, Circle City argues its allegations that "DISH refused to offer Circle City—an African American owned business—a contract on the same or similar terms for the same or better content than it had offered to Nexstar—which is not an African American owned business" are factual allegations. "If true," these allegation, "answer the question that will be asked of the jury in this case, namely, whether or not race was the but-for cause of DISH's actions." (Filing No. 26 at 7.)  According to Circle City, "these factual allegations advance the claim that had Circle City's

owner been white and everything remained the same, DISH would have agreed to the terms with Circle City." *Id.* at 7-8. In particular,

> [a]fter the sale, Circle City, the new minority owner of these two stations, improved the content and quality, and therefore the value, of the stations but nevertheless was rebuffed by DISH. If the content of the stations remained the same or improved and the race of the owner changed from white to black, it is plausible to conclude that the race of the owner was the but-for cause of DISH's refusal to negotiate a fair deal with Circle City.

*Id*. at 8. In addressing DISH's argument that Nexstar received a better deal because it was a larger corporation with more leverage, Circle City contends that those are summary judgment arguments and that Circle City's Amended Complaint is sufficient to "inform DISH 'of the factual basis for [its] complaint.'" *Id.* at 9.

Plaintiffs contend the key issue in this case is "whether there is systemic racial discrimination in the broadcast sphere, generally, and whether race was a specific but-for reason DISH refused to negotiate a retransmission agreement with Circle City on terms similar to the retransmission agreement DISH signed with Circle City's non-minority owned predecessor." (Filing No. 28 at 2.) Plaintiffs maintain that "[i]f the content of the stations remained the same or improved and the race of the owner changed from white to black, it is plausible to conclude that the race of the owner was the but-for cause of DISH's refusal to negotiate a fair deal with Circle City." (Filing No. 26 at 8.)

In reply, DISH maintains that Circle City has alleged "no *facts*" showing that the only change between Nexstar and Circle City was the owner's race (Filing No. 27 at 1–2) (emphasis in original). Instead, argues DISH, most of the Amended Complaint's allegations consist of "'conclusory statements,'" and the points that are non-conclusory have nothing "remotely to do with the stations' prospective, actual 'demand'" and do not "'nudge [the] claim … across the line from conceivable to plausible.'" *Id.* at 4–6 (quoting *Iqbal*, 556 U.S. at 678, 682–83 (quotation

7

omitted)). DISH argues that Circle City ignores the "obvious alternative explanation" that a "broadcaster that owns roughly 200 stations reaching 40% of American households commands *far* more bargaining leverage than a broadcaster that owns two local stations—neither of which is affiliated with ABC, CBS, FOX or NBC—no matter how many 'live local High School sporting events' the two stations air." *Id.* at 2 (emphasis in original). While Circle City argues that courts do not consider these alternative explanations at the pleading stage, DISH argues that is the very analysis conducted by the Supreme Court in *Iqbal*. *Id.*; *id.* at 7–8.

In support of their contention that Circle City's § 1981 claim against it fails because it does not plead sufficient allegations to satisfy "but-for" causation, DISH points to *NAAAOM v. Comcast*, 2016 WL 11652073 (C.D. Cal. Oct. 5, 2016). In this case, "an 'African-American-owned' company (ESN) sued a television programming distributor (Comcast) for refusing to carry channels due to alleged racial animus." ([Filing No. 23 at 5.](#)) The district court held that although "ESN insisted that its channels were in 'demand,' it supported that assertion with statistics about 'potential, not actual, demand,' and it did not 'exclude the alternative explanation' that Comcast's refusal to contract was 'based on legitimate business reasons.'" *Id.* (citing *NAAAOM*, 2016 WL 11652073). Here, DISH contends that the same outcome should follow when "Circle City provides no statistics about any kind of demand—only vague, self-serving assertions that it offered DISH 'any and everything Nexstar offered as a broadcast and business partner." *Id.*

Plaintiff's agree that *Comcast* established that to prevail, a plaintiff must initially plead and ultimately prove, that "but for race," it would not have suffered the loss of a legally protected right. However, in *Comcast*, the Supreme Court did not "pass on whether ESN's operative amended complaint contains sufficient factual matter, accepted as true, to sate a clam to relief that is

8

plausible on its face under the but for causation standard," rather, the case was remanded for further proceedings to make that determination. *See Comcast* at 1019.

Having examined the but-for causation standard and the Seventh Circuit's decision in *Swanson v. Citibank, N.A.,* 614 F.3d 400 (7th Cir. 2010), the Court agrees with Plaintiffs that their Amended Complaint survives dismissal at this stage, because Plaintiffs have pled enough in the way of facts to at minimal, present a circumstantial case for intentional discrimination. In *Swanson*, the bank turned down a loan applicant, and asserted that the appraisal of the security for the loan indicated the loan would not be adequately secured, thus, the alternative hypothesis of racial discrimination was implausible. But the Seventh Circuit concluded the plaintiff's allegations of discrimination in violation of the Fair Housing Act – a statute that includes the same "because of" language that leads courts to apply the but-for causation standard, see 42 U.S.C. § 3605(a) – were sufficient because "Swanson's complaint identifies the type of discrimination that she thinks occurs (racial), by whom (Citibank, through Skertich, the manager, and the outside appraisers it used), and when (in connection with her effort in early 2009 to obtain a home-equity loan). This is all that she needed to put in the complaint." 614 F.3d at 405 (citing, among other cases, *Swierkiewicz*, 534 U.S. 506, at 511-12 (2002)). Considering the limited allegations found sufficient in *Swanson*, and *Swierkiewicz*, Plaintiffs here have supplied at least that level of detail.

The Court has considered DISH's argument that Circle City "broadly" contends that it improved the stations, but has failed to plead any facts that support its conclusion that it was similarly situated to Nexstar or about any actual demand for its stations. However, the Court is persuaded by Circle City's argument that an extensive comparison of these channels for purposes of determining disparate treatment due to race would require a factual inquiry that is inappropriate

in a 12(b)(6) motion. See *Earl v. Neilson Media Research, Inc.*, 658 F.3d 1108, 1114-15 (9th Cir. 2011). Indeed, in a foot note, DISH explains:

> if the case were to survive dismissal, DISH would seek summary judgment further showing why business considerations, not race, are the but-for reason Circle City has no contract with DISH. The designated evidence would address DISH's offers to Circle City for the stations, Circle City's "final" offer, and DISH's concerns regarding changes in station content including WISH-TV losing sports rights, and online availability. The designated evidence would also identify how many Nexstar stations DISH paid to retransmit in addition to the two stations at issue. Finally, it would show that Circle City's leader was more interested in promoting his individual accolades to the DISH negotiator, such as YouTube videos featuring him, rather than engaging in serious negotiations.

(Filing No. 23 at 9, n. 3). Circle City is forewarned that DISH will seek summary judgment.

At this stage of the proceedings, the Court must accept as true Plaintiffs' allegations that "DISH insists on maintaining the industry's decades long policies and practices of discriminating against minority-owned broadcasters by paying the non-minority broadcasters significant fees to rebroadcast their stations and channels while offering practically no fees to the historically disadvantaged broadcaster and programmer for the exact same or superior programming." (Filing No. 19 at 4) (emphasis in original). "When a federal court reviews the sufficiency of a complaint, before the reception of any evidence either by affidavit or admissions, its task is necessarily a limited one. The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). Thus, from a pleading perspective, Circle City has done enough.

Circle City was required to inform DISH "of the factual basis for [its] complaint." *Johnson v. City of Shelby, Miss*, 574 U.S. 10, 12 (2014) (per curiam). It was "required to do no more to stave off threshold dismissal for want of an adequate statement of [its] claim. *See* Fed. Rules Civ. P. 8(a)(2) and (3), (d)(1), (e)." *Id.* As filed, Circle City's pleadings sufficiently suggest that "racial

10

prejudice [was a but-for cause] of the refusal to transact," *Bachman v. St. Monica's Congregation*, 902 F.2d 1259, 1263 (7th Cir. 1990).

## IV.   CONCLUSION

A motion to dismiss pursuant to Rule 12(b)(6) does not test whether the plaintiff will prevail on the merits but instead whether the claimant has properly stated a claim. *See Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974). The plausibility standard is not akin to a "probability requirement," but "it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal* at 1949.  For the reasons stated above, the Court concludes that Plaintiffs have pled enough to make out a plausible Section 1981 claim to survive this pleadings challenge.  It therefore **DENIES** DISH's Motion to Dismiss (Filing No. 22).  Whether or not these claims can survive summary judgment is a matter for another day.

**SO ORDERED.**

Date:  3/31/2021

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Gregory Forrest Hahn
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
ghahn@boselaw.com

Daniel A. Kirkpatrick
FLETCHER HEALD & HILDRETH PLC
kirkpatrick@fhhlaw.com

Vilda Samuel Laurin, III
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
slaurin@boselaw.com

John Bruster Loyd
JONES GILLASPIA LOYD LLP
bruse@jgl-law.com

John R. Maley
BARNES & THORNBURG, LLP (Indianapolis)
jmaley@btlaw.com

Andrew M. McNeil
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
amcneil@boselaw.com

Dylan Pittman
BARNES & THORNBURG, LLP (Indianapolis)
dylan.pittman@btlaw.com