UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CIRCLE CITY BROADCASTING I, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:20-cv-00750-TWP-TAB |
| ) | |
| DISH NETWORK, LLC, ) | |
| ) | |
| Defendant. ) | |

**ORDER ON DEFENDANT'S MOTION TO EXCLUDE
EXPERT TESTIMONY OF MARK FRATRIK**

**I.   Introduction**

Defendant DISH Network LLC has once again moved to exclude the testimony of Plaintiff Circle City Broadcasting I, LLC's expert witness, Dr. Mark R. Fratrik. In December 2021, the Court denied DISH's initial motion to exclude Fratrik's testimony and instead granted Plaintiff's motion to supplement Fratrik's expert report. At that time, Circle City stated that it would amend Fratrik's report to address DISH's concerns that Fratrik did not adequately disclose the bases and reasons for his opinions. Despite Fratrik's amended report, DISH's motion to exclude argues Fratrik's report still warrants full exclusion for lack of relevance and reliability. [Filing No. 153.] The Court agrees that Fratrik's testimony is somewhat problematic. In particular, Fratrik's damages calculations include two three-year renewal periods that are overly speculative. Accordingly, DISH's motion to exclude [Filing No. 153] is granted in part, and Fratrik will not be permitted to testify as to those damages calculations. The remainder of Fratrik's testimony will not be excluded at this time, though at trial it will be subject to robust cross examination and the careful scrutiny of the presiding judge.

**II.     Background**

The Court has relayed the factual and legal background of this litigation numerous times. Briefly, Circle City alleges that DISH refused to contract with Circle City based on race, in violation of 42 U.S.C. § 1981.  DISH denies this allegation and contends that Circle City demanded unrealistic rates that DISH reasonably rejected.  DISH's motion for summary judgment is ripe and awaiting resolution, and this case is set for trial on May 23, 2022.

Circle City timely disclosed Fratrik's damages expert report in September 2021, and DISH deposed Fratrik in October.  In November 2021, Circle City filed a motion for leave to supplement its expert disclosure to address DISH's concerns about the completeness of Fratrik's expert disclosure. [Filing No. 120.]  On the same day, DISH moved to exclude Fratrik's testimony. [Filing No. 123.]  DISH argued that Fratrik ignored the Nexstar "contractual standard" claimed by Circle City and instead substituted a new one, calculating damages based on rates to which Circle City and Comcast agreed through 2022.  However, Circle City never proposed those rates to DISH. [Filing No. 123, at ECF p.1.]  The Court noted in its December 2, 2021, order addressing these motions that "DISH's concerns in this regard appear well founded, regardless of Circle City's insistence that Fratrik's opinions are admissible." [Filing No. 149, at ECF p. 2.]  However, the Court opted to allow Circle City to amend its disclosure, rather than exclude Fratrik.  Thus, the Court granted Circle City's motion for leave to supplement its expert disclosure [Filing No. 120], allowed DISH to take a supplemental deposition of Fratrik, and denied DISH's motion to exclude [Filing No. 123].  On January 28, 2022, DISH again moved to exclude Fratrik's expert testimony. [Filing No. 153.]  Circle City opposes the motion. [Filing No. 169.]  This motion now pends.

### III. Discussion

DISH argues that Fratrik's amended report warrants full exclusion for lack of relevance, reliability, or both under Federal Rules of Evidence 702 and Federal Rules of Civil Procedure 26(a)(2). [Filing No. 154, at ECF p. 2.] "Under Federal Rules of Civil Procedure, an expert must provide a complete statement of all opinions the witness will express and the basis and reasons for them and the facts or data considered by the witness in forming them." *Duro v. Walton*, No. 3:13-cv-103-JD, 2021 WL 4453741, at *12 (N.D. Ind. Sept. 29, 2021) (internal citation and quotation marks omitted), *appeal filed by Duro, Inc. v. Walton*, No. 21-3025 (7th Cir. 2021) (text not available); *see* Fed. R. Civ. P. 26(a)(2)(B). Under Fed. R. Civ. P. 37(c), "[i]f a party fails to provide information . . . required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."

Rule 702 sets forth the general framework for the admissibility of expert testimony, and provides that a witness who is qualified as an expert based on knowledge, skill, experience, training, or education may provide opinion testimony so long as:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702. The Supreme Court interpreted Rule 702 in *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 589 (1993), to mandate that the district court "must ensure that any and all scientific testimony or evidence admitted is not only relevant, but reliable."

> In performing its gatekeeper role under Rule 702 and *Daubert*, the district court must engage in a three-step analysis before admitting expert testimony. It must determine whether the witness is qualified; whether the expert's methodology is scientifically reliable; and whether the testimony will 'assist the trier of fact to

> understand the evidence or to determine a fact in issue. In other words, the district court must evaluate: (1) the proffered expert's qualifications; (2) the reliability of the expert's methodology; and (3) the relevance of the expert's testimony.

*Gopalratnam v. Hewlett-Packard Co.*, 877 F.3d 771, 779 (7th Cir. 2017) (internal citations and quotation marks omitted). *See also Kopplin v. Wisconsin Cent. Ltd.*, 914 F.3d 1099, 1103-04 (7th Cir. 2019) ("The ultimate question is whether the expert's approach is scientifically valid, which requires a careful examination of its evidentiary relevance and reliability. The focus is on the expert's methodology, not his ultimate conclusions." (Internal citation and quotation marks omitted)).

In seeking leave to serve the amended report, Circle City assured the Court that the supplemental disclosure would not contain new opinions, but rather would hopefully eliminate DISH's concerns regarding the basis of Fratrik's opinions. [Filing No. 120, at ECF p. 2.] The amended version did not ease DISH's concerns. The report still does not calculate damages resulting from DISH blocking an actual proposal. Rather, it relies on Comcast rates starting September 19, 2019, that were never proposed to DISH. The amended report adds only that the Comcast rates are "marketed revealed" and "evidence of value." [Filing No. 154-1, at ECF p. 4.] Thus, Fratrik's amended report still calculates damages purportedly resulting from DISH not agreeing to nine years of rates that Circle City entered with Comcast but never proposed to DISH.

Fratrik's amended report states that Circle City incurred financial damages in two forms: (1) lost retransmission consent revenues, and (2) lost advertising revenues. [Filing No. 154-1, at ECF p. 2.] Fratrik also included in his damages calculations—both originally and in the amended report—an extension of two three-year renewal periods. Thus, Fratrik's amended report concludes that Circle City incurred over $9 million in retransmission damages from 2019

4

to 2028 from non-carriage of WISH and WNDY.  [Filing No. 154-1, at ECF p. 15.]  As for advertising revenue, the amended report—like its predecessor—opines that if DISH had accepted the never-proposed terms, then Circle City would have been carried by DISH, reached more viewers, and earned millions of dollars in extra advertising revenue.  The amended report's sole change to the advertising revenue calculation pushes back the initial period's start date to account for the fact that DISH did carry the stations from September 19, 2019, until October 4, 2019—the date Fratrik presumes DISH should have continued carrying the stations at the never-proposed Comcast rates.  This date change reduces the original report's $4.77 million advertising-revenue damages calculation by $88,074.  [Filing No. 154-1, at ECF p. 15.]  DISH attacks the reliability of Fratrik's report as it calculates damages for three-plus years at Comcast rates, plus six extra years at rising rates.  DISH argues that Circle City never proposed the Comcast rates to DISH for *any* period, let alone for two extra three-year renewal periods.  Circle City opposes DISH's motion to exclude Fratrik's expert testimony by arguing that the proper method for DISH's challenges to Fratrik's opinions, methods, and assumptions is cross-examination and the presentation of contrary evidence.  [Filing No. 169, at ECF p. 1.]

In *Daubert*, the Supreme Court identified "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" as the "traditional and appropriate" means for challenging admissible evidence.  *Daubert*, 509 U.S. at 596.  With this in mind, the Court addresses DISH's challenges.  First, DISH raises both relevance and reliability concerns, noting that Fratrik has never negotiated a retransmission deal or served as a retained damages expert to testify on estimated damages in this scenario.  While true, it is likewise true that Fratrik has considerable credentials and experience.  Fratrik holds a Ph.D. in Economics from Texas A&M University and has spent his career studying the broadcast industry.  DISH

does not directly challenge Fratrik's expert qualifications, and Fratrik's experience and knowledge could help the trier of fact in understanding evidence as it relates to the question of damages.

The next question is whether Fratrik's opinions are reliable—a closer question indeed. Circle City may only recover damages resulting from DISH unlawfully blocking an existing or proposed contractual relationship. *See, e.g., Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 476 (2006) ("Section 1981 offers relief when racial discrimination blocks the creation of a contractual relationship, as well as when racial discrimination impairs an existing contractual relationship, so long as the plaintiff has or would have rights under the existing or proposed contractual relationship."). Both sides acknowledge that DISH and Circle City did not have an existing contract, so damages would have to be based on DISH unlawfully blocking a proposed one.

DISH argues that Fratrik's report "still has nothing to do with any such 'proposed' contract" and ignores the two offers Circle City actually proposed, as well as Circle City's claim that DISH's deal with Nexstar was the "contractual standard" allegedly containing the stations' "market rate." [Filing No. 143, at ECF p. 6.] Fratrik's amended report, like the original, does not explain why Fratrik selected the Comcast rates as the basis for his opinions. DISH argues that the report warrants exclusion because it has no support or reliable basis and methodology and rests on reasoning not disclosed per Fed. R. Civ. P. 26(a). [Filing No. 154, at ECF p. 8.] In addition, Fratrik's report describes Comcast as a major Multichannel Video Programming Distributor (MVPD) "similar in reach as DISH," which DISH argues is unsupported and inaccurate. [Filing No. 154-1, at ECF p. 4.] DISH takes further issue with Fratrik's claim, in both the amended and original report, that Circle City has a "Most Favored" (MFN) clause in the

6

Comcast agreement, so offering DISH a lower rate was not advantageous.  Finally, DISH argues that Fratrik fails to explain why rates acceptable to Comcast are "evidence of value" while rates acceptable to AT&T are not.  He does not explain why he charges Comcast rates to DISH, nor does he explain why he extended the never-proposed Comcast rates and raises them over six extra years.  [Filing No. 154, at ECF p. 9-10.]

In response, Circle City notes that it has recognized the importance of the DISH-Nexstar contract to this case and has argued that the market rates should include rates that are the same as, similar to, or comparable to the Nexstar-DISH rates.  Circle City argues, "Nothing in Dr. Fratrik's opinion is in tension with these statements."  [Filing No. 169, at ECF p. 5.]  Circle City cites to various statements in its amended complaint regarding market rates and argues that Fratrik's opinion on damages recognized that "market-revealed rates" are relied upon by economists in assessing value.  [Filing No. 169, at ECF p. 5.]

Ultimately, DISH's *Daubert* argument challenges the sufficiency of the evidence, not relevance.  Given the lack of an underlying contract, which is ultimately the heart of this case, there is logic behind Fratrik using other contracts in the market to help determine potential damages.  Fratrik's methodology is not so flawed that he should be stricken outright as irrelevant or unreliable.  DISH undoubtedly can and will raise its arguments and concerns with Fratrik's approach through cross-examination and competing evidence.  Similarly, DISH's argument that Comcast and DISH are not sufficiently similar, and that Fratrik should have been influenced by the status of Circle City's negotiations with AT&T, go to the weight of Fratrik's opinion, not the reliability of his assumptions on the market-revealed rate specific to Indianapolis.  These concerns can all be raised during cross-examination at trial, which should sufficiently illuminate any shortcomings.

Moreover, it should be noted that pretrial rulings are preliminary in nature. *See, e.g., Eversole v. H & J Trucking, Inc.*, No. 3:09-cv-007-RLY-WGH, 2010 WL 9589559, at * 3 (S.D. Ind. June 4, 2010) ("The rulings with respect to these motions [to exclude expert testimony and in limine] are preliminary in nature and are subject to change depending upon the evidence and argument presented at trial."). The presiding judge can further limit Fratrik's testimony during trial, if appropriate, as the evidence is presented and any shortcomings in Fratrik's testimony are further exposed.

However, this does not end the Court's analysis. Fratrik's opinion extending damages based on two hypothetical three-year renewal periods goes too far. Contrary to both Fed. R. Evid. 702 and Fed. R. Civ. P. 26(a)(2), Fratrik neither discloses nor provides any basis for extending the damages calculations, using the never-proposed Comcast rate, for two additional three-year periods. As DISH notes, the parties work in a rapidly changing industry. This extension is highly speculative and unsupported, particularly given that Fratrik is not even aware of whether Circle City and Comcast even discussed renewal, let alone DISH. No jury verdict in this case could possibly assign liability for those future periods. Thus, Fratrik is precluded from extending retransmission and advertising damages based on such speculative renewal periods. DISH's motion to exclude Fratrik's testimony is granted in this respect both for falling short of the admissibility standard of Fed. R. Evid. 702 as well as for failing to comply with Fed. R. Civ. P. 26(a)(2).

## IV.     Conclusion

DISH's motion to exclude Fratrik's testimony is granted in part. [Filing No. 153.] Fratrik is precluded from testifying about two additional—highly speculative—three-year renewal periods. The portions of his report that address these speculative renewal periods are stricken. However, if this case proceeds to trial, Fratrik is not excluded from testifying in relation to his underlying calculations of retransmission and advertising revenue damages for the initial three-year period from 2019 to 2022.

Date: 3/22/2022

_____
Tim A. Baker
United States Magistrate Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email