UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CIRCLE CITY BROADCASTING I, LLC, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 1:20-cv-00750-TWP-TAB |
| DISH NETWORK, LLC, | ) ) ) |
| Defendant. | ) |

**ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

This matter is before the Court on a Motion for Summary Judgment filed by Defendant DISH Network, LLC ("DISH"). (Filing No. 81.) Plaintiff Circle City Broadcasting I, LLC ("Circle City") initiated this action alleging DISH engaged in unlawful race discrimination in contract negotiations when the parties failed to reach an agreement regarding two of Circle City's television stations and the accompanying retransmission fees. Following discovery, DISH filed this Motion seeking judgment as a matter of law as to Circle City's race discrimination claim. For the following reasons, the Court **grants** DISH's Motion.

## I.   BACKGROUND

The following facts are not necessarily objectively true, but as required by Federal Rule of Civil Procedure 56, the facts are presented in the light most favorable to City Circle as the non-moving party.[1] *See Zerante v. DeLuca*, 55 F.3d 582, 584 (7th Cir. 2009); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Accordingly, Circle City is given the benefit of any conflicts in the evidence and reasonable inferences from the evidence, but without vouching for

---

[1] Both parties spent time briefing the history between DISH and a third-party entity, Bayou City Broadcasting Evansville, Inc., with whom DuJuan McCoy was affiliated in 2014 and 2015. Bayou City Broadcasting is not a party to this suit. Given that this history has no bearing or relevance in the case, it will not be discussed by the Court.

the objective truth of any fact or expressing any opinion on the weight of the evidence. *Garofalo v. Village of Hazel Crest*, 754 F.3d 428, 430 (7th Cir. 2014); *Lewis v. City of Chicago*, 496 F.3d 645, 651 (7th Cir. 2007).

Circle City is a small Black owned business that provides local television broadcasting and owns television stations WISH (Channel 8) and WNDY (Channel 23) in Indianapolis, Indiana. (Filing No. 103-1 at 1.) DuJuan McCoy ("McCoy"), a Black male, is the 100% owner of Circle City Broadcasting, LLC, which owns roughly 77% of Circle City Broadcasting I, LLC. (Filing No. 103-1 at 1.) On September 19, 2019, Circle City purchased the two stations–WISH and WNDY–from Nexstar Broadcasting, Inc. ("Nexstar"). *Id.* at 8. Prior to the purchase, Nexstar had entered into a retransmission contract with DISH to broadcast the two stations, among others. (Filing No. 95-1 at 14.) DISH is a television programming distributor, also referred to as a multichannel video programming distributor ("MVPD"). *Id.* at 8. Because of the terms of the retransmission contract between DISH and Nexstar, DISH exercised its right to terminate the contract when WISH and WNDY were sold to Circle City. *Id.* at 16.

On July 25, 2019, DISH, through its Vice President of Programing Melisa Boddie ("Boddie"), emailed Circle City to begin negotiations on a new retransmission agreement. *Id.* The email was sent to McCoy. (Filing No. 103-1 at 1.) In the email, DISH included its proposed terms. (Filing No. 84-22, Filing No. 84-23, Filing No. 84-3.) McCoy responded the same day stating that Circle City would not be engaging in negotiations until after its purchase of the two stations was closed. (Filing No. 83-6.) Boddie replied by thanking McCoy for the email and letting him know that DISH would need to remove the stations from DISH's channel offerings until a replacement contract was in place. (Filing No. 83-7, Filing No. 84-3.)

After these initial emails, Boddie and McCoy exchanged several emails between July and September 2019. (Filing No. 95 at 17.) In these emails, McCoy inquired as to why DISH was offering Circle City rates that were significantly lower than those previously offered to Nexstar. *Id.* In response, Boddie stated that "extremely large groups, like Nexstar, are able to extract money for stations that MVPDs would not pay for otherwise, simply by withholding consent for the stations MVPDs really do want until the MVPD agrees to pay for the stations it does not want." (Filing No. 84-24, Filing No.84-3.)  In response, McCoy wrote that he thought DISH's negotiation position was prejudicial to "small businesses like mine"; however, a month later he again responded that the parties would "try to work a deal" once the closing date was "secure". (Filing No. 83-9, Filing No. 84-3.)

On September 25, 2019, McCoy sent his first offer to Boddie. (Filing No. 95-1. at 19.) The rates proposed by McCoy were higher than those DISH was previously paying to Nexstar. *Id.* at 20. Boddie responded by declining McCoy's proposal, explaining that the rates were "unprecedented" and expressing concerns over one of Circle City's stations providing its newscast for free on the internet and that the station would also be losing access to broadcast Chicago Cubs games at the end of the season.  *Id.*  Boddie proposed that the parties "explore different options" on the duration of an initial, no-fee carriage arrangement.  *Id.* McCoy responded that he would make "plans to move forward without DISH for the long haul." *Id.*  Boddie and McCoy continued to exchange emails over the coming weeks but were unable to reach an agreement. *Id.* at 21-23.

Finally, on November 26, 2019, McCoy sent an email to Boddie stating that it was his "last and final offer to DISH!"  *Id.* at 23.  In the email, McCoy stated that he now had an MFN (Most Favored Nation)[2] status in place and he set forth proposed rates for both stations over the next four

---

[2] As explained by DISH, "MFN" stands for "Most Favored Nation" and references that the best rate for one entity would be conveyed to any other entity that was given MFN status. (Filing No. 95-1 at 16.)

years. *Id*. Two weeks later McCoy sent Boddie a draft contract incorporating the proposal rates. *Id.* at 24. Boddie responded that she appreciated McCoy sending over the draft contract and would get back to him after the holidays. *Id.* at 24-25. On January 9, 2020, McCoy emailed Boddie asking if DISH had any "interest in doing a deal." *Id.* Boddie responded the following day stating, "While I appreciate the offer, the rates you are proposing are not going to work for DISH. I can send you a markup of the draft, but if what you are proposing is a take it or leave it, then it may be a waste of time to send it." *Id.* McCoy did not respond directly to Boddie or request that she complete a markup of the draft. *Id.*

In March 2020, Boddie emailed McCoy regarding a "temporary restore" of Circle City's stations so that DISH customers would have access to the news and updates related to the COVID-19 pandemic. *Id.* Boddie proposed that the parties operate under the previous agreement that allowed DISH to temporarily carry the stations after Circle City closed on its purchase from Nexstar. *Id.* McCoy declined and stated that Circle City would proceed if DISH was willing to agree to the previously provided market MFN. *Id.*

On March 9, 2020, Circle City filed the present lawsuit against DISH. (Filing No. 4.) In its Amended Complaint (Filing No. 19), Circle City claims that DISH violated its civil rights under 42 U.S.C. § 1981 in their contract negotiations. *Id.* Specifically, Circle City asserts that "DISH's refusal, during the contract negotiating process, to offer Circle City anything comparable to the Nexstar-DISH rates" or the "market rates for WNDY and WISH" was based on McCoy's race. (Filing No. 103-1 at 11). DISH has filed for summary judgment on this claim. (Filing No. 81.)

## II.   LEGAL STANDARD

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio*

*Corp.*, 475 U.S. 574, 587 (1986). Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Hemsworth v. Quotesmith.com, Inc.*, 476 F.3d 487, 489–90 (7th Cir. 2007). In ruling on a motion for summary judgment, the court reviews "the record in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante*, 555 F.3d at 584 (citation omitted). The moving party bears the burden of showing the absence of genuine issues of material fact. *Lewis v. Wilkie*, 909 F.3d 858, 866 (7th Cir. 2018). If the moving party carries its burden, the burden shifts to the non-moving party to present specific facts showing that there is a genuine issue for trial. *Anderson*, 477 U.S. at 250.

"However, inferences that are supported by only speculation or conjecture will not defeat a summary judgment motion." *Dorsey v. Morgan Stanley*, 507 F.3d 624, 627 (7th Cir. 2007) (citation and quotation marks omitted). Additionally, "[a] party who bears the burden of proof on a particular issue may not rest on its pleadings, but must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." *Hemsworth*, 476 F.3d at 490 (citation omitted). "The opposing party cannot meet this burden with conclusory statements or speculation but only with appropriate citations to relevant admissible evidence." *Sink v. Knox County Hosp.*, 900 F. Supp. 1065, 1072 (S.D. Ind. 1995) (citations omitted).

"In much the same way that a court is not required to scour the record in search of evidence to defeat a motion for summary judgment, nor is it permitted to conduct a paper trial on the merits of [the] claim." *Ritchie v. Glidden Co.*, 242 F.3d 713, 723 (7th Cir. 2001) (citations and quotation marks omitted). "[N]either the mere existence of some alleged factual dispute between the parties

nor the existence of some metaphysical doubt as to the material facts is sufficient to defeat a motion for summary judgment." *Chiaramonte v. Fashion Bed Grp., Inc.*, 129 F.3d 391, 395 (7th Cir. 1997) (citations and quotation marks omitted).

### III.  DISCUSSION

The basis of Circle City's lawsuit is that once it acquired WISH and WNDY, DISH refused to contract with it for the payment of fees for that right, for the longest time offering zero dollars, and at the eleventh hour offering only pennies per subscriber. Circle City asserts that the only thing that changed after it purchased the two stations, was the stations' owner—it went from being a non-Black-owned company to a Black-owned company. After DISH's race-based refusal to contract became apparent, Circle City it sued DISH for race discrimination in the making of contracts pursuant to 42 U.S.C. § 1981.

The Seventh Circuit has held that, "*all* discrimination cases present the same basic legal inquiry:  At the summary-judgment stage, the proper question to ask is 'whether the evidence would permit a reasonable factfinder to conclude that the plaintiff's race, ethnicity, sex, religion, or other proscribed factor caused the [plaintiff's] discharge or other adverse employment action.'" *Ferrill v. Oak Creek-Franklin Joint Sch. Dist.*, 860 F.3d 494, 499 (7th Cir. 2017) (quoting *Ortiz v. Werner Enterprises, Inc.*, 834 F.3d 760, 765 (7th Cir. 2016) (emphasis in original).  In *Ortiz*, the Seventh Circuit overruled a series of cases dividing discrimination claims into "direct" and "indirect" categories and assigning different legal standards to each. *See* 834 F.3d at 765 ("Evidence is evidence. Relevant evidence must be considered and irrelevant evidence disregarded, but no evidence should be treated differently from other evidence because it can be labeled 'direct' or 'indirect.'"). To make out a case of discrimination, a plaintiff may provide either direct or circumstantial evidence that supports an inference of intentional discrimination.

6

In support of its request for summary judgment, DISH makes two arguments. First, DISH argues that Circle City lacks standing to bring a § 1981 claim because it is not a member of a racial minority. The second is that Circle City has failed to show that its status as a racial minority was the "but for" cause that the parties were unable to negotiate a contract. The Court will address each argument in turn.

A.    **Circle City's Status as a "Racial Minority"**

DISH first argues that Circle City's claim fails because it is not "a member of a racial minority." (Filing No. 95-1 at 32.) Title 42 U.S.C. § 1981 provides that "all persons . . . shall have the same right in every State and Territory to make and enforce contracts . . . as is enjoyed by white citizens." 42 U.S.C. § 1981; *see also Comcast Corp. v. Nat'l Ass'n of African American-Owned Media*, 140 S. Ct. 1009, 1014 (2020). "To establish a prima facie claim of [race] discrimination, [the plaintiff] must show (1) he is a member of a racial minority; (2) the defendant[] had the intent to discriminate on the basis of race; and (3) the discrimination concerned the making or enforcing of a contract." *Pourghoraishi v. Flying J, Inc.*, 449 F.3d 751, 756 (7th Cir. 2006) (citing *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir 1996)).

As DISH asserts, the Seventh Circuit has allowed a § 1981 claim to proceed when the plaintiff entity is 100% owned by an individual who is a racial minority. (Filing No. 95-1 at 32.) But neither the Seventh Circuit nor the U.S. Supreme Court have specifically allowed a business entity to proceed when the entity is "controlled by additional entities and governed by a Board of Directors consisting mostly of white people." *Id.* at 33. DISH argues that Circle City is not exclusively owned by McCoy, but rather it is owned by two entities: (1) Circle City Broadcasting, LLC, which is owned by McCoy, owning approximately 77% of the company; and (2) Alta Circ TV, LLC owning the remaining 23%, which is owned by

7

six white individuals. *Id.* Further, Circle City Broadcasting, LLC is governed by a three-member Board of Directors, one of which is McCoy, and the other two who are white individuals. *Id.* DISH argues that these facts establish that Circle City is not a racial minority. *Id.*

In response, Circle City points out that while the extent to which a § 1981 business entity plaintiff may bring a claim remains an open question, several circuit decisions support allowing Circle City to proceed. (Filing No. 103-1 at 25.) Relying on *Carnell Constr. Corp. v. Danville Redevelopment & Housing Auth.*, 745 F.3d 703, 715 (4th Cir. 2014), Circle City notes that the Fourth Circuit determined that an entity could pursue its racial discrimination claim when that entity was certified by the state as a minority-owned business. *Id.* Circle City asserts that it has both city and state certifications showing that it is a minority-owned business. *Id.* Additionally, Circle City argues that the Federal Communications Commission's criteria for determining a majority ownership status involves looking at whether an individual or group of individuals belong to the same racial group and hold more than 50% of the voting interests in the licensee. *Id.* at 25-26. Using this criterion and based on Circle City Broadcasting, LLC owning 77% of Circle City, which is 100% owned by McCoy, Circle City asserts that it should be considered Black majority owned. *Id.* at 26.

In reply, DISH argues that Circle City has failed to cite any case law supporting that it is a racial minority. (Filing No. 112-1 at 18.) Additionally, DISH contends that Circle City only obtained its minority-owned business certifications *after* it had initiated this lawsuit against DISH. *Id.* at 19. And DISH asserts that Circle City's reliance on *Carnell* is defective because the Fourth Circuit clarified that it reached its decision not because the entity was a minority-owned business but rather because its president and sole shareholder was Black. *Id.*

The Court is not persuaded by DISH's argument. Though neither the Seventh Circuit nor the Supreme Court have definitively decided the issue, several circuits have held that an entity may assert a § 1981 claim even if it is not minority owned. *See Thinket Ink Info. Res., Inc. v. Sun Microsystems, Inc.*, 368 F.3d 1053, 1060 (9th Cir. 2004) ("[I]f a corporation either suffers discrimination harm cognizable under § 1981, or has acquired an imputed racial identity, it is sufficiently within the statutory zone of interest to have prudential standing to bring an action under § 1981."); *see also White Glove Staffing, Inc. v. Methodist Hospitals of Dallas*, 947 F.3d 301, 306-07 (5th Cir. 2020) (holding that non-minority-owned plaintiff entity "does not need a racial identity to have standing to assert a § 1981 racial discrimination claim"); *McClain v. Avis Rent A Car Sys., Inc.*, 648 F. App'x 218, 222 n.4 (3d Cir. 2016) (concluding that a corporate plaintiff had "statutory standing under § 1981 based on the theory that the corporation was discriminated against due to the race of its owner and main operator"). The Court is persuaded that Circle City has satisfied its standing as a racial minority to assert its § 1981 claim.

B.     **"But for" Causation**

DISH next argues that Circle City has failed to establish that "racial prejudice" was the reason DISH refused to contract with Circle City. (Filing No. 95-1 at 33.) In the context of a § 1981 claim, "a plaintiff must . . . ultimately prove that, but for race, it would not have suffered the loss of a legally protected right." *Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media*, 140 S. Ct. 1009, 1019 (2020). DISH contends that Circle City has tried to prove "but for" causation by focusing on the rates DISH offered Nexstar. (Filing No. 95-1 at 34.)

DISH asserts that not offering Circle City the rates it offered to Nexstar ("Nexstar rates") does not constitute a refusal to transact that "block[ed] the creation of a contractual relationship." *Id.* (quoting *Domino's Pizza, Inc. v. McDonalds*, 546 U.S. 470, 476 (2006)). Since the negotiations

9

between the parties, Circle City has contracted with two other companies—Comcast and Charter—for rates lower than the Nexstar rates. *Id.* DISH argues that this proves that its refusal to offer the Nexstar rates could not have "blocked" a contractual relationship as Circle City contracted with other parties for lower rates.  *Id.* Dish argues the "but for" cause was not race, but rather Boddie's legitimate business judgment. *Id*.

DISH next contends there is no evidence that the decision to not offer the Nexstar rates was based on racial prejudice. *Id.* at 35. According to DISH, Circle City attempts to make its case by trying to show that Circle City and Nexstar were similarly situated companies, resting its claim that the "only meaningful distinction" between the two companies were programming "improvements" and the change in ownership. *Id.* But DISH argues that the comparison fails because the two companies are not "directly comparable . . . in all material respects . . . to eliminate other possible explanatory variables." *Id.* at 35-36 (quoting *Williams v. Office of Chief Judge of Cook Cnty. Ill.*, 839 F.3d 617, 626 (7th Cir. 2016)). DISH points out the several material distinctions between the two companies including Nexstar's substantial station portfolio—which includes the highest number of Big-4 stations of any broadcasting group—that offers it leverage in negotiations and the loss of sports programming after Circle City acquired the two stations. *Id.* at 36.  As DISH puts it, these differences do not "support Circle City's thesis that it was similarly situated to Nexstar, or that race was the but-for cause  . . . of any DISH refusal to transact." *Id.* at 32.

DISH contends that there is no evidence in the record that Boddie, the sole decision maker for DISH, was lying or possessed racial animus that was pretext for not offering Circle City the same rates offered to Nexstar.  *Id.* "Pretext does not exist if the decision-maker honestly believed the non-discriminatory reason . . . ." *Smiley v. Columbia Coll. Chi.*, 714 F.3d 998, 1005 (7th Cir.

2013). DISH points out that the undisputed evidence shows that Boddie, a Hispanic woman who is married to an Black male, made no "racial comments" during negotiations and was perceived by McCoy as being "polite, civil, and courteous." (Filing No. 95-1 at 40.) She was upfront with Circle City that Nexstar's size was what allowed it to extract fees for less desirable stations. *Id.* While Circle City may argue that Boddie's business judgment shows a preference for larger companies, DISH asserts that nothing in the record supports an inference that Boddie's actions were covering up racism. *Id.*

In response, Circle City asserts that the applicable "market rates" should guide the Court's § 1981 analysis. (Filing No. 103-1 at 26.) Circle City argues that both what DISH paid Nexstar and the rates Circle City negotiated with Comcast and Charter are relevant to determining the appropriate "market rate." *Id.* at 27. When negotiating with Boddie, Circle City argues that the highest rate offered was "egregiously low" when compared to the two other rates. *Id.* Circle City argues that even though DISH contends this disparity was not caused by race, it has "earned the right to tell its story to the jury." *Id.* While DISH argues that it did not "block" contractual negotiations, Circle City argues "[t]he evidence on how DISH defines 'market … permits an inference that McCoy knew he would never get anywhere with his negotiations with DISH due to his race and so he would have to file this lawsuit." *Id.*

Circle City also argues that it and Nexstar were sufficiently situated. *Id.* at 30. It contends that whether two entities are similarly situated is a factor in determining whether an adverse decision may be based on race or legitimate business judgment, but that the question is normally reserved for a jury. *Id.* (citing *D.S. v. East Porter Cnty. Sch. Corp.*, 799 F.3d 793, 799-800 (7th Cir. 2015)). Circle City asserts that the inquiry comparing two companies is "whether there are sufficient commonalities on the key variables between the plaintiff and the would-be comparator

11

to allow the type of comparison that, taken together with the other prima facie evidence, would allow a jury to reach an inference of discrimination." *Id.* at 30-31 (quoting *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007). DISH's proposed differences between Circle City and Nexstar—market power and programming—fail for multiple reasons. *Id.* at 31. First, Circle City argues that any difference in bargaining power would not affect the market rate for the two stations as the market rate is determined by what other MVPDs pay for channels. *Id.* Moreover, Circle City is offering the same channels in the same market and carrying the same content that Nexstar was offering and, thus, should have received the same market rate despite the difference in size between it and Nexstar. *Id.* Second, Circle City contends that internal documentation shows that streaming WISH's news program and the loss of the Cubs games were not material differences that would justify offering different rates. *Id.* at 32.

Finally, Circle City argues that it has offered evidence that Boddie provided "shifting and inconsistent" reasons for not offering Circle City Nexstar rates. *Id.* at 28. Boddie first stated that the difference in offered rates was due to Nexstar's market power. *Id.* Then, according to Circle City, Boddie stated that it was not because of a change in ownership, but rather because it offered its news free online and because the Cubs programming would be pulled after the 2019 season. *Id.* Circle City asserts that "DISH's inability to keep its story straight allows the jury to conclude that DISH is lying and covering for its race-based discrimination." *Id.* at 28-29.

In reply, DISH first contends that Circle City's arguments regarding the market rate are without merit. The rates negotiated between Circle City and Comcast totaled 15% less than the Nexstar rates; thus, just because DISH did not offer Circle City the Nexstar rates does not mean that it "blocked the creation of a contractual relationship." (Filing No. 112-1 at 20.) Additionally, DISH contends that Circle City's claim that the rates it agreed to with Comcast and Charter are

now the "market rates" should be disregarded as this argument is a new theory that was not included in the original complaint. *Id.* And to the extent that the Comcast and Charter rates are relevant, DISH asserts that the evidence undisputedly shows that DISH was never offered these rates by Nexstar. *Id.* at 21.

Next, DISH argues that the assertion that Circle City and Nexstar are similarly situated is flatly wrong. *Id.* at 22. DISH contends that Circle City does not dispute the leverage disparity between Circle City and Nexstar. *Id.* According to DISH, Circle City's attempt to use the rates it received from Comcast and Charter to show it was similarly situated to Nexstar fails because this was not a basis on which Circle City brought its original complaint and because different buyers proposing different prices occurs in all industries. *Id.* at 23. DISH also argues that while Circle City attempts to paint Boddie's statements as inconsistent when referring to whether Circle City's leverage influenced the negotiations, Boddie never contradicted DISH's reasons for not offering Nexstar rates. *Id.* at 23-24. Instead, DISH asserts that Boddie was offering "additional detail on why the stations' actual value to DISH (uninflated by Nexstar's leverage) is low." *Id.* at 24.

DISH also argues that the differences in programming distinguish Nexstar and Circle City. *Id.* While Circle City attempts to argue that the alleged programming differences—online streaming of news content and loss of the Cubs games—were also true for Nexstar, DISH points out that the Nexstar rates were negotiated in 2016. *Id.* DISH argues there is no evidence in the record that these issues with programming were known to DISH at the time it negotiated with Nexstar. *Id.* at 24-25.

Finally, concerning pretext, DISH contends that Circle City's arguments regarding Boddie's decision-making fail. McCoy himself testified that he did not believe Boddie was a racist. *Id.* at 25. DISH argues that any alleged "inconsistent or shifting" reasons for not offering Nexstar

13

rates have been explained. *Id.* at 26. The negotiations between DISH and Nexstar occurred in 2016, several years before the negotiations between DISH and Circle City. *Id.* DISH argues that Circle City cannot create a triable issue of pretext given the consistency of Boddie's statements, material differences between Circle City and Nexstar, and the lack of evidence pointing to any racial animus. *Id.*

After reviewing the briefing, record, and arguments presented at oral argument, the Court agrees with DISH. There is no evidence in the record to either support the claim that racial discrimination caused DISH or Boddie to discriminate against Circle City or create a triable issue of fact. Boddie, as the sole decision maker for DISH, made no statements, sent no emails, or otherwise provided any indication that DISH's reason for not offering Nexstar rates was due to race. It is undisputed that there is no direct evidence of race discrimination.

Without any direct evidence of discrimination, Circle City relies on alleged pretext for Boddie's and DISH's decision making. The Seventh Circuit has "set a high evidentiary bar for pretext" that Circle City does not meet. *Riley v. Elkhart Cmty. Sch.*, 829 F.3d 886, 894 (7th Cir. 2016). The Court finds nothing "inconsistent" or "shifting" in the statements Boddie made to McCoy regarding the reasons DISH was not offering Nexstar rates. Circle City unsuccessfully tries to create pretext from different negotiations that involved a different, broadcaster (Bayou) and occurred years before the Circle City negotiations at issue. Merely providing speculative and conclusory belief about Boddie's business decisions is not evidence of pretext. *See Sanchez v. Henderson*, 188 F.3d 740, 746 (7th Cir. 1999) (citing *Russell v. Acme–Evans Co.*, 51 F.3d 64, 68 (7th Cir. 1995)) ("The pretext analysis seeks to uncover the true intent of the defendant, not the belief of the plaintiff.").

And the Court is not persuaded that Circle City reaching broadcasting agreements with other MVPDs equates to establishing irrefutable market rates or means that DISH's only reason for not matching these rates was based on race. Circle City cannot show that Boddie's explanation was anything other than a business decision, and there is no designated evidence to show that the rate decision was based on McCoy's race. Unlike in *Joll v. Valparaiso Community Schools*, 953 F. 3d 923 (7th Cir. 2020), there is no evidence that DISH's decision maker—Boddie—expressed any racial stereotypes or race related inferences in the decision making process. In *Joll*, a Title VII sex discrimination action arising from a school district failure to hire Joll for an assistant coach position, there was evidence that the school district's decision makers expressed sex-role stereotypes during the decision making process. The Seventh Circuit found that the district courts finding this evidence was "mere stray remarks" was in error, and those remarks could support reasonable inference of discriminatory motive. *Id*. at 934-935.  Boddie made no such comments or behaviors to support any racial animus.

Additionally, and despite Circle City's arguments to the contrary, there is enough evidence in the record showing that Circle City and Nexstar are not similarly situated companies.  "[A] court may properly grant summary judgment where it is clear that no reasonable jury could find that the similarly situated requirement has been met." *McDonald v. Vill. of Winnetka*, 371 F.3d 992, 1002 (7th Cir. 2004).  Circle City cannot refute that in terms of bargaining leverage and programming, Circle City and Nexstar are not "directly comparable…in all material respects." *Williams v. Office of Chief Judge of Cook Cnty*. Ill., 839 F.3d 617, 626 (7th Cir. 2016).  Circle City does not deny the leverage disparity between it and Nexstar (Filing No. 103-1, 31) (calling the disparity "obvious[]")]; that Boddie had been concerned about it years earlier; and in July 2019 Boddie voiced those concerns to McCoy. There is no dispute that Nexstar, as the largest broadcasting

group owning Big-4 stations, holds leverage and a negotiating position that far exceeds Circle City's. Though Circle City attempts to present Boddie's statements as DISH's admission that ownership did not matter, the size difference between the two companies clearly and reasonably, influenced negotiations. And Circle City's arguments regarding similarities to programming fail to persuade given that there is no evidence in the record that DISH's concerns—broadcasting news for free online and losing sports programming—existed in 2016 when the Nexstar contract was negotiated.

There are no genuine issues of material fact as to whether DISH intentionally discriminated against Circle City in contract negotiations because Circle City is a Black owned business. And there is simply no evidence that race was the "but for" cause that prevented DISH from entering into a contract with Circle City. DISH's Motion for Summary Judgment is **granted.**

### IV.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant DISH Network, LLC's Motion for Summary Judgment. ([Filing No. 81](Filing No. 81).) Plaintiff Circle City Broadcasting I, LLC's claims are **dismissed** on summary judgment. All pending motions are **denied as moot**.

Final judgment will issue under separate order.

**SO ORDERED.**

Date:   3/31/2023

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Andrew M. McNeil
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
amcneil@boselaw.com

Cyrus Mehri
MEHRI & SKALET, PLLC
cmehri@findjustice.com

Daniel A. Kirkpatrick
BAKER HOSTETLER
dkirkpatrick@bakerlaw.com

Gregory Forrest Hahn
BOSE MCKINNEY & EVANS, LLP (Indianapolis)
ghahn@boselaw.com

John Bruster Loyd
JONES GILLASPIA LOYD LLP
bruse@jgl-law.com

Joshua Karsh
MEHRI & SKALET, PLLC
jkarsh@findjustice.com

Dylan Pittman
BARNES & THORNBURG, LLP (Indianapolis)
dylan.pittman@btlaw.com

John R. Maley
BARNES & THORNBURG, LLP (Indianapolis)
jmaley@btlaw.com